UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM J. COSTELLO, individually
and as TRUSTEE OF THE ARTICLE VII
FUND UNDER THE WILLIAM J. COSTELLO
DECLARATION OF TRUST, and
ELIZABETH COSTELLO, an individual,   Case No. 5:06-CV-213

      Plaintiffs,   Hon. Richard Alan Enslen

v.

PATTERSON DENTAL SUPPLY,
INC., a Minnesota corporation,

      Defendant.   /   **OPINION**

This matter is before the Court on Plaintiffs' Amended Motion for Preliminary Injunction and Defendant's Motion to Compel Arbitration, Stay Proceedings and Dissolve *Ex Parte* Temporary Restraining Order. These Motions have been fully briefed and the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR 7.2(d).

**I.   PROCEDURAL BACKGROUND**

Plaintiffs William J. Costello, individually and as Trustee of the Article VII Fund under the William J. Costello Declaration of Trust and Elizabeth Costello (collectively, "Plaintiffs") first brought their action in Ingham County Circuit Court. On December 8, 2006, Plaintiffs obtained an *Ex Parte* Temporary Restraining Order from the Ingham County Circuit Court which temporarily enjoined Defendant from submitting any dispute to the Independent Accountants. Plaintiffs also moved the state court for a preliminary injunction enjoining arbitration; however, Defendant removed the action from state court to this Court before a hearing on Plaintiffs' Motion for Preliminary Injunction was held.

Upon removal, this Court granted a Stipulation and Order to extend deadlines for response to Plaintiffs' Complaint and Motion. Defendant has now moved the Court to Compel Arbitration, Stay Proceedings and Dissolve the *Ex Parte* Temporary Restraining Order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Plaintiffs have moved the Court to grant a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65.

## II.    FACTUAL BACKGROUND

This action stems from a 63-page Ownership Interest Purchase Agreement ("Agreement") executed by the parties concerning the sale of a dental supply business. On September 6, 2005, Plaintiffs sold their ownership interests in Accu-Bite, Inc.; Strategic Dental Marketing, Inc.; Accu-Bite Dental Products, LLC; and Williamston Industrial Center, LLC (collectively "Accu-Bite") to Defendant. (Compl. ¶ 10.) The Closing was complete on September 6, 2005. (*Id*. 7.) Pursuant to the Agreement, Defendant was to pay a purchase price and, if certain requirements were met, to make "Earn Out payments" to Plaintiffs over three years based on post-sale performance of the purchased entitles. (*Id*. ¶ 19 & Ex. B. §§ 2.2, 2.4.) The Earn Out payments were defined as 11% of the "Net Sales" in excess of $50 million in each of the three years after closing. (*Id*. ¶ 20.) Net sales was defined in the Agreement to be post-close sales to Accu-Bites' pre-closing customers or prospective customers and also revenues from all sales of Accu-Bite's products. (*Id*. ¶ 21.) Under the Agreement, the Net Sales amount was to be reduced by the amount of "Baseline Year Sales" which were revenues from sales by Defendant to Accu-Bite customers from September 1, 2004, through August 31, 2005. Reducing the Net Sales figure by the Baseline Year Sales would result in the amount of the Earn Out payment. (*Id*. ¶ 23.)

A.	Earn Out Dispute

Plaintiffs allege at the time of closing, Accu-Bite was a business which primary sold dental-related products ("proprietary products") and was set to experience growth in its Net Sales. (*Id.* ¶¶ 11-12, 34.) Plaintiffs assert that after the closing, Defendant's actions regarding the company adversely impacted their ability to earn their Earn Out payments. These alleged actions by Defendant include eliminating certain elements of the Accu-Bite business, *i.e.* departments, offices, employees, and also selling off the proprietary products to competing businesses. (*Id.* ¶ 69.)

Plaintiffs also allege that in 2006, approximately one year after the closing, Defendant contacted Plaintiffs regarding its decision to "unilaterally" change the Baseline Sales figure. (*Id.* ¶¶ 43-45.) Under the Agreement, such a change was not allowed. (*Id.* ¶ 44.) Defendant also apprised Plaintiffs that the non-binding monthly Earn Out sales reports were incorrect because of unreported Earn Out Sales. (*Id.* ¶ 45.) Plaintiffs objected and sent Defendant a notice of its reservation of rights to contest Defendant's revision of the Baseline Year Sales figure. (*Id.* ¶ 46.) Despite the objection, Defendant used the contested Baseline Year Sales figure to calculate the Earn Out payment owed to Plaintiffs, which resulted in a much smaller amount owed. (*Id.* ¶¶ 47-48.) Plaintiffs filed this action to resolve the dispute and keep the issue from being submitted to Independent Accountants pursuant to section 2.4(f) of the Agreement. (*Id.* ¶ 49.) Plaintiffs also seek through a declaratory action and their Motion for a Preliminary Injunction to keep a separate issue, the Closing Balance Sheet dispute, from being submitted to the Independent Accountants. (*Id.* ¶ 99.)

### III. LEGAL STANDARD[1]

"The purpose of the FAA was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." *Keymer v. Mgmt. Recruiters Int'l, Inc*. 169 F.3d 501, 504 (8th Cir. 1999) (citing *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 24 (1991)). The FAA applies to any "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . ." 9 U.S.C. § 2. These agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Further, the court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application . . . stay the trial . . . until arbitration has been had." 9 U.S.C. § 3.

Pursuant to the FAA, a party may seek to compel arbitration under the FAA if it is injured by the "alleged failure, neglect, or refusal of another to arbitrate under a written agreement." 9 U.S.C. § 4. In deciding whether the parties agreed to submit a dispute to arbitration, the Court must first find an agreement to arbitration exists and then determine if the dispute falls within the scope of the agreement. *Keymer*, 169 F.3d at 504 (citing *Daisy Mfg. Co. v. NCR Corp*., 29 F.3d 389, 392 (8th Cir. 1994)). State law contracting principles are applied to determine whether parties have agreed to arbitrate a certain issue. *See Id*. It is well settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983). However, the Supreme Court has held "the FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."

---

[1] The Court notes both parties agree Minnesota law applies to this dispute pursuant to the Choice of Law provision in the Agreement. (*See* Ex. B at § 8.11.)

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 57 (1995). "Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

**IV.    ANALYSIS**

A.    Motion to Compel

The parties agree on several key issues: Minnesota law applies to the dispute pursuant to section 8.11 of the Agreement; the underlying transaction involved interstate commerce; and the Agreement and Section 2.4(f) are valid and enforceable. Therefore, the relevant inquiries are: whether an arbitration clause exists such that the FAA applies and, if an arbitration clause exists, what is its scope? These inquires rely on the interpretation and characterization of sections 2.2(b)(ii) and 2.4(f) of the Agreement. Section 2.2(b)(ii) states in pertinent part:

> In the event of a dispute involving the computation of the Earn-Out that the Purchaser and the Interest holder's Representative cannot resolve within twenty (20) days following the earlier of the Interestholders' Representative's receipt of the Earn-Out payment or the Earn-Out Payment Date, the Purchaser and the Interestholders' Representative shall engage the Independent Accountants and follow the procedures in Section 2.4(f) to resolve the dispute . . .

(Compl. Ex. B § 2.2(b)(ii).) Section 2.4(f) provides the parties must submit "objections and discrepancies, which resolution, if achieved shall be fully and completely binding upon the parties and not subject to further review, appeal, or dispute" to a third-party accounting firm. (*Id*. Ex. B § 2.4(f).) Section 2.4(f) also sets forth in detail the procedure for the dispute resolution including what evidence the parties may submit, who bears the expenses, and allows for the "Independent Accountant" to conduct a conference. (*Id*.)

1.	Existence of Arbitration Agreement

The Court holds section 2.4(f) is an arbitration agreement. The parties agreed in a valid contract to submit any dispute involving the computation of the Earn Out or Purchase Price to Independent Accountants who would render a final, binding and non-appealable decision following a proscribed procedure set forth by the parties in the Agreement. Plaintiffs argue Section 2.4(f) lacks the word "arbitration" and therefore cannot be interpreted to be such a provision. The Court rejects this argument as to adopt it would directly contradict the broad construction and application of the FAA. *See Moses*, 460 U.S. at 24. Further, other courts have found that the FAA "reflects unequivocal support of agreements to have third parties decide disputes – the essence of arbitration. No magic words such as 'arbitrate' or 'binding arbitration' or 'final dispute resolution' are needed to obtain the benefits of the Act." *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1985) (citing *City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 194 (1910)); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998); *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 349 (3d Cir. 1997). In the present action, the parties specifically contracted for disputes involving the Earn Out and Purchase Price computations to be heard and decided by a predetermined third-party and such determinations would be binding and final. (Compl. Ex. B. at § 2.4(f).)

Plaintiffs argue section 2.4(f) does not constitute an arbitration clause under the FAA but rather, is an appraisal clause. *See Sanitary Farm Dairies v. Gammel*, 195 F.2d 106, 113 (8th Cir. 1952) (applying Minnesota law and finding an appraisal clause is not an arbitration agreement); *but see Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1580-82 (9th Cir. 1987) (finding enforceable arbitration agreement where disputed issues were to be decided by independent appraisers); *Butler Prods. Co. v. Unistrut Corp.*, 367 F.2d 733, 734-36 (7th Cir. 1966) (recognizing an arbitration clause

6

where the clause stated "the items in dispute shall be submitted for determination to the firm of Peat, Marwick, Mitchell & Co."). In *Brassard v. Western Capital Corp.*, 763 F. Supp. 1017 (D. Minn. 1990), the district court found under Minnesota law, where there is no ambiguity on its face that a clause is for valuation, it cannot be held to be an arbitration clause. *Id.* at 1019. The *Brassard* court held "[i]n general, where parties to a contract, before a dispute and in order to avoid one, provide for a method of ascertaining the value of something related to their dealings, the provision is one for appraisement and not for arbitration." *Id.* (quoting *Sanitary Farm Dairies*, 195 F.2d at 113). However, the present provision in the Agreement can be differentiated from an apprisal clause in several respects. An appraisal clause serves the purpose of avoiding a dispute. *Sanitary Farm Dairies,* 195 F.2d at 113. Moreover, an apprisal clause generally does not implicate liability and does not allow for the adjudication for disputes, claims or controversies. *See* 44 A.L.R.2d 850, n.1 (2007) (difference between an arbitration clause and an appraisement; "arbitration presupposes the existence of a dispute or controversy . . . appraisement is an agreed method of ascertaining value or amount of damage . . . with object of preventing future disputes, rather than of settling present ones"); s*ee also Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058 (5th Cir. 1990) (holding insurance appraisals are unlike arbitration agreements because appraisals are informal and do not determine liability.) In the present action, the language in the provision is broadly worded to encompass any "dispute[s] involving the computation of the Earn-Out." (Compl. Ex. B. § 2.2(b)(ii)). In *Brassard*, the at issue clause narrowed the scope of the third-parties' authority to merely "re-determine the amount of Additional Compensation." *Brassard*, 763 F. Supp. at 1019. *Brassard* also lacks any substantive analysis which could apply in the present case where the language is ambiguous as to the scope of the provision. *Id.* Further, section 2.4(f) provides a very specific

7

procedure for the Independent Accountants to follow which includes a hearing in which the parties may "present evidence" and have their counsel present. (Compl. Ex. B. § 2.4(f).) Section 2.2(b)(ii) and 2.4(f) are not focused on avoiding a dispute, but rather only are triggered when a "dispute" arises. (*See* Ex. B § 2.2(b)(ii).) Therefore, the provision is not an appraisal clause.

Plaintiffs argue the Agreement contemplates other remedies, namely sections 5.4 and 8.11, and therefore, section 2.4(f) cannot be an arbitration agreement. The Court finds this argument unpersuasive. Section 5.4 contemplates a mediation procedure and presumes a judicial resolution if such a mediation fails in the context of indemnification under the Agreement. Section 5.4 states "[i]n the event a dispute arises under this Agreement, *except with respect to Section 2.4 or equitable remedies pursued* under this Agreement, such disputes shall be resolved [pursuant to this mediation procedure.]" (Compl. Ex. B § 5.4.) Section 8.11 sets forth a choice of law provision and designates the specific courts in which cases involving the Agreement can be brought. The Court has not found, and Plaintiffs have not submitted to the Court, any support for the argument that where multiple remedies exist in a contract, no arbitration agreement can exist. Rather, different remedies in the Agreement merely evidences the parties intent to have different and specific remedies for varying disputes. The Court finds the presence of these sections influences the *scope* of an arbitration clause, but does not prove the *absence* of one. For these reasons, the Court finds section 2.4(f) is an arbitration agreement under the FAA.

    2.    Scope of Arbitration Agreement

In deciding whether to compel arbitration, a district court must determine whether the dispute is arbitrable – whether the issue is within the scope of the agreement to arbitrate. The Court may not rule on the merits of any claim which the parties have agreed to arbitrate. *See AT&T Tech. v. Comm.*

*Workers*, 475 U.S. 643, 649-50 (1986). To determine the scope of the arbitration agreement, the Court must analyze the agreement pursuant to Minnesota law. *See Keymer*, 169 F.3d at 504 (citation omitted). Minnesota courts interpret contracts based upon the intent of the parties as expressed by the language employed. *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004).

    a.    Earn Out Dispute

Section 2.2(b)(ii) provides that section 2.4(f) applies to "dispute[s] involving the computation of the Earn Out." Both parties agree that Minnesota courts look to dictionaries for the common meaning of a contract term. *See Bank Midwest, Minn., Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 180 (Minn. 2004). The American Heritage Dictionary defines "computation" as "the act or process" to "determine an amount or number." AMERICAN HERITAGE DICTIONARY, 3d Ed. 1996. Therefore, by its plain language, disputes involving the determination of the amount of the Earn Out should be rightfully submitted to the Independent Accountants per section 2.4(f).

Plaintiffs' claims are extremely attenuated from any determination of an amount of the Earn Out. In Count I, Plaintiffs allege breach of contract where Defendant did not follow the timing or procedure for the calculation of the Baseline Year Sales Figure in Section 7.15 of the Agreement. (*Id*. ¶¶ 50-59.) Plaintiffs allege a breach of the covenant of good faith and fair dealing where Defendant deliberately lowered the Earn Out amount by selling off Accu-Bites Products to competitors in Count II. (*Id*. ¶¶ 60-72.) Plaintiffs claim in Count III Defendant made fraudulent misrepresentations to induce Plaintiffs to enter into the Agreement. (*Id*. ¶¶ 73-81.) In Count IV, Plaintiffs request an equitable accounting pursuant the Agreement of all the Earn Out Sales. (*Id*. ¶¶ 82-89.) These claims are clearly legal or equitable claims which are far outside the scope of section

2.4(f) which applies to disputes involving the determination of the Earn Out amount. Moreover, the short time frame for the decisions (30 days); the lack of testimony under oath; and the complete lack of expertise of the Independent Accountants in law evidences the narrow scope of the provision. In the present action, where Plaintiffs' claims are so attenuated from the Earn Out determination process, they are outside the scope of the arbitration agreement in section 2.4(f).

      b.      Closing Balance Sheet Dispute

The Closing Balance Sheet Dispute, unlike the Earn Out Claims Plaintiffs have alleged, falls entirely within the scope of the arbitration clause in section 2.4(f). First, the Court notes Plaintiffs barely allege or mention this dispute in their Complaint.[2] Only in Count VI, a request for declaratory judgment, is the dispute mentioned. In Count VI, Plaintiffs seek a declaratory judgment from the Court so that Defendant cannot submit "one aspect of the dispute between the parties to arbitration." (Compl. ¶ 99.) No where in the Complaint is the Closing Balance Sheet Dispute elaborated upon, nor do Plaintiffs allege a separate legal claim involving the Closing Balance Sheet Dispute. From the Motions and Responses, the Court understands the Closing Balance Sheet Dispute to be a disagreement between Plaintiffs and Defendant over the *determination of the amount* or the *computation* of Plaintiffs' equity in Accu-Bite. After Plaintiffs submitted the valuation, Defendant objected and noticed Plaintiffs it wished to submit the dispute to the Independent Accountants pursuant to section 2.4(f) which encompasses disputes or objections to the Closing Balance Sheet. (Compl. Ex. B. 2.4(c) & 2.4(f).)

---

[2]The Court notes the title "Closing Balance Sheet Dispute" gains it title from Plaintiffs' Amended Motion for Preliminary injunction. (Dkt. No. 16.)

The fact that this dispute may involve the Independent Accountants reading and applying the Agreement and its language to properly compute the Purchase Price does not prove the dispute is outside the scope of 2.4(f). Indeed it would be impossible for the Independent Accountants to determine the figure at issue without reference to the document which defines it. As stated previously, it is well settled that under the FAA "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25. Here, where the dispute arises under the same section of the Agreement in which the arbitration clause is found, the dispute involves the computation of the Purchase Price, and the question is clearly within the expertise of the Independent Accountants, the issue must be properly submitted to arbitration under the Agreement.

Plaintiffs argue in their Complaint and Motion for Preliminary Injunction that arbitration of the Closing Balance Dispute should be enjoined because Defendant *might* have breached the Agreement and therefore cannot reap the benefit of the bargain by enforcing any portion of it. This argument is without merit and outside the scope of this Court's inquiry. Defendant seeks to compel arbitration pursuant to the FAA; therefore, the Court is constrained in deciding only whether an arbitration agreement is valid and also whether it embraces the parties' disputes. 9 U.S.C. §§ 2-3. Plaintiffs do not allege the Agreement is void. 9 U.S.C. § 2. Rather, Plaintiffs wish the Court to stop a completely separate dispute from being properly submitted to arbitration because Plaintiffs have *alleged* Defendant has breached the Agreement. Plaintiffs fail to submit any authority applicable to the present circumstances on the issue, and fail to argue this issue in its Response to Defendant's Motion to Compel. Moreover, the Court is constrained in its inquiry as to the validity of the arbitration clause and its scope. Plaintiffs seek for the Court to evaluate the merits of their

11

claims of breach before its initial determination of whether the arbitration agreement in section 2.4(f) embraces the Closing Balance Sheet Dispute. Plaintiffs' argument is outside that determination and, therefore, the argument fails.

Accordingly, where the Closing Balance Sheet Dispute is properly within the scope of the arbitration agreement, the issue shall be submitted to the Independent Accountants pursuant to section 2.4(f) of the Agreement and the *Ex Parte* Temporary Restraining Order will be dissolved. Further, pursuant to the FAA, Plaintiffs' claims regarding the Earn Out Dispute shall be properly stayed pending the resolution of arbitration. 9 U.S.C. §3.

B.   Preliminary Injunction

Plaintiffs moved this Court for a Preliminary Injunction to keep Defendant from arbitrating any part of the dispute. Defendant, in response, moved the Court to stay and compel arbitration under the FAA and agreed not to submit any issue to arbitration pending the Court's decision regarding its Motion to Compel. As the Court has found the Earn Out dispute is beyond the proper scope of the arbitration agreement, it will not be submitted to the Independent Accountants. However, since the Court has determined the Closing Balance Sheet dispute is properly within the scope of the aforementioned clause, it shall be submitted to the Independent Accountants pursuant to section 2.4(f). Therefore, the rest of the dispute will be properly stayed until its resolution. In light of these facts, the Preliminary Injunction requested by Plaintiffs is moot and shall not be addressed by the Court.

V.   **CONCLUSION**

The Court will grant in part and deny in part Defendant's Motion to Compel Arbitration, Stay Proceedings, and Dissolve *Ex Parte* Temporary Restraining Order. The Court will compel the

arbitration of the Closing Balance Sheet Dispute, stay the rest of the dispute until arbitration is complete, and dissolve the *Ex Parte* Temporary Restraining Order. The Court will deny Plaintiffs' Motion for a Preliminary Injunction as moot. An Order consistent with this Opinion shall issue.

Dated in Kalamazoo, MI:        /s/Richard Alan Enslen
April 5, 2007        Richard Alan Enslen
      Senior United States District Judge